UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
TYLER CUMMINS,

                Plaintiff,                      **DECLARATION OF**
                                                                                 **AFSAAN SALEEM**

                -against-                      **15-CV-0096 (NG)(PK)**

CITY OF NEW YORK, et. al.,

                Defendant.
-------------------------------------------------------------------------------X

       AFSAAN SALEEM, an attorney admitted to practice in the State of New York, declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, as follows:

       1.     I submit this Declaration in support of my fee application submitted in the above-captioned matter.

       2.     I am familiar with the facts and circumstances concerning the prosecution of this action, and I submit this declaration in support of plaintiff's application, pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d), for an order awarding plaintiff attorneys' fees and costs as the prevailing party in this litigation.

       3.     I received my law degree from Brooklyn Law School in June 2001. At Brooklyn Law, I was an Edward V. Sparer Public Interest Law Fellow, an Academic

Achievement scholar and a participant in the Federal Litigation and Social Justice Project Clinic.

4. Upon graduation from law school, in August 2001, I was appointed as an Assistant Corporation Counsel of the City of New York and began working in the Brooklyn Borough Office of the Tort Division defending the municipality and its employees in state court negligence and civil rights actions.

5. In 2005, after only four years at the Law Department, I was promoted to Senior Counsel and designated as a trial attorney. During my tenure in the Brooklyn Tort office, I tried thirteen cases to verdict, had several cases settle during trial and picked over thirty juries. I have engaged in extensive pre-trial and post-trial motion practice, conducted over 200 depositions and drafted several motions that were decided in the City's favor on appeal to the Second Department. *See Dick v. The Gap, Inc.*, 16 A.D.3d 615 (2nd Dept. 2005); *Santoro v. City of New York*, 795 N.Y.S.2d 60 (2nd Dept. 2005); *Moody v New York City Bd. of Educ.,* 8 AD3d 639 (2nd Dept. 2004); *Palopoli v. City of New York*, 305 A.D.2d 388 (2nd Dept. 2003). Further, I served as trial counsel in *Shaperonovitch v. City of New York*, which resulted in a landmark 2008 New York Court of Appeals decision fundamentally changing the notice

requirements in personal injury cases in New York State.  *See D'Onofrio v. City of New York*, 11 N.Y.3d 581 (2008).

6. In 2006, I transferred to the Special Federal Litigation Division of the New York City Law Department, which was the division specifically created to defend Section 1983 cases brought against police and correction officers in federal court. I was immediately assigned to the role of a Senior Counsel on the class action entitled *McBean v. City of New York*, 02-CV-5426 (JGK) (THK) and the related action brought by intervenor-plaintiffs, *Ramos v. City of New York*. The *McBean* litigation involved constitutional challenges to the New York City Department of Correction's ("DOC") new admission strip-search policies at six of the jails on Rikers Island. As part of my role, I participated in several high-level strategy meetings with the DOC Commissioner and General Counsel, defended the depositions of several high-ranking DOC officials and was going to be one of the lead attorneys defending DOC in an injunction hearing. The case garnered extensive media attention and ultimately settled in 2010 for $33 million, including $4 million in attorneys' fees.

7. Aside from work on *McBean*, while serving in Special Federal Litigation, I was selected to work as one of the trial counsel in the 2007 trial of *Green v. City of New York*

before the Honorable Richard M. Berman in the Southern District of New York because at the time I was one of the few attorneys in the division with significant trial experience. The Green case involved the involuntary hospitalization of a ventilator-dependent individual with Lou Gehrig's Disease with only the use of his eyelids to express himself. The case was very complex and emotionally sensitive given plaintiff had died before trial, numerous City employees from all three emergency service agencies were involved and there was several medical experts who testified.

8.  In 2008, I tried *Estes v. City of New York*, a § 1983 false arrest and excessive force case, before the Honorable Sandra L. Townes in the Eastern District of New York, obtaining a defense verdict against Fred Lichtmacher, a well-respected civil rights plaintiff's attorney. *See* 01-CV-5158 (SLT).

9.  In 2009, I tried the § 1983 false arrest and excessive force case *Stephen v. Hanley* before the Honorable Kiyo A. Matsumoto in the Eastern District of New York. The plaintiffs in *Stephen* were represented *pro bono* by a team of eight attorneys from Mayer Brown. One of the plaintiffs obtained nominal damages on a single claim against one of the defendants. The verdict was otherwise in favor of the nine defendants. On appeal, the

4

Second Circuit affirmed and the Supreme Court denied *certiori*. *Stephen v. Hanley*, 376 Fed.Appx. 158 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 795 (2010).

10. I also tried *Lopez v. Joshua* to a defense verdict before the late Honorable David G. Trager in the Eastern District of New York in 2009. Lopez also involved § 1983 claims of excessive force and false arrest against an HHC police officer. See 08-CV-1871 (DGT) (VVP).

11. In 2010, I was assigned to handle the defense of the City and three NYPD detectives in *Zhao v. City of New York* before the Honorable Lewis A. Kaplan in the Southern District of New York. *Zhao*, which involved the wrongful detention of an individual accused of committing a cold case murder, was very contentious and complex and required countless hours examining the practices of several NYPD investigators and the intricacies of video surveillance imaging.

12. In 2010, I was also invited to serve as an instructor at the National Institute of Trial Advocacy ("NITA"), the nation's leading provider of legal advocacy skills training. I conducted several days of intensive NITA training at Fordham Law School attended by the entering classes of several litigating divisions of the Law Department. I also lectured at a Continuing Legal Education ("CLE") program, "Cross-Examining Medical Experts"

presented at the Law Department in 2010. My cross-examination of the plaintiff's doctor in *Stephen* was selected for inclusion in the course materials.

13. In September 2010, I entered private practice and founded a plaintiff's civil rights law firm where the vast majority of the cases involved claims of false arrest, excessive force and/or malicious prosecution. I also served as a co-lecturer in a CLE given to the Legal Aid Society and Brooklyn Defenders Office. During my time at the firm, I handled hundreds of cases and took several cases to verdict.

14. In May 2013, I left the firm to work on staff of a New York City mayoral campaign. Thereafter I was hired as the Deputy Director of the Legal Division of the New York City Department of Consumer Affairs ("DCA"), responsible for the supervision and preparation of eight junior attorneys at administrative trials.

15. After a year at DCA I was recruited by Ms. Amy Rameau, through mutual acquaintances in the legal community, who vouched for my experience, to return to private practice by joining her firm. At The Rameau Law Firm, I am responsible for all aspects of the firm's cases, including but not limited to, conducting depositions, attending court conferences, conducting client intakes, and raising and responding to discovery issues.

16. Mr. Robert Marinelli was one of the acquaintances who put Ms. Rameau in touch with me as he was intimately familiar with my work as we had briefly worked together. Mr. Marinelli asked me to work on the Cummins case to provide him with additional support handling discovery and court conferences and being the lead point of contact with defense counsel while he attended to other cases in his solo practice. The work performed on the Cummins case was not duplicative as either he or I attended a court conference or participated in phone calls or conferences. We did have to confer at time to coordinate our efforts and strategize and that is no different than what attorneys would do with a partner and other associates.

17. All of the work performed on this case was necessary due to the fact that defendants gave plaintiff the impression that they were considering the case to be a "no pay." The vigor which they defended the case did not belie this belief. Numerous hours were spent litigating discovery disputes that led to several court conferences.

18. Accordingly, based upon my over fifteen years practicing as an attorney, nine of which has been spent in the Office of the Corporation Counsel, and four of which as a Senior Counsel in the division exclusively responsible for the defense of Section 1983 cases brought in federal court I feel that my requested hourly rate of $450.00 as entirely

reasonable, justified, and in line with the prevailing rates for an attorney of my experience in the Eastern District.

19. I spent 42.2 hours of time spent working on the underlying case. At the rate of $450/hour that amounts to $18,472.50. In addition, I have spent an additional 5.5 hours working on the motion, amounting to an additional $2,475.00 in fees. In total, I have spent 47.7 hours working on the case for a total bill of $20,947.50. <u>See</u> the annexed Exhibit 1 which contains my time records and bill for this case.

DATED: New York, New York
August 15, 2016

_____
AHSAAN SALEEM