UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

TYLER CUMMINS,

                    Plaintiff,

             -against-

CITY OF NEW YORK; Police Officer STEVEN
ACEVEDO, Shield No. 16469, Police Officer
JAMES BERK, Shield No. 2974, and Sergeant
RAJINDER SINGH, Shield No. 4527, JOHN and
JANE DOE 1 – 10; individually and in their official
capacities,

                    Defendants.

------------------------------------------------------------------ x

                                           15-CV-0096 (NG)(PK)

## PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR ATTORNEY'S FEES AND COSTS

ROBERT MARINELLI, ESQ.
305 Broadway, Suite 1001
New York, New York 10007
(212) 822-1427

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

TYLER CUMMINS,

                            Plaintiff,

                  -against-

CITY OF NEW YORK; Police Officer STEVEN
ACEVEDO, Shield No. 16469, Police Officer
JAMES BERK, Shield No. 2974, and Sergeant
RAJINDER SINGH, Shield No. 4527, JOHN and
JANE DOE 1 – 10; individually and in their official
capacities,

                            Defendants.

------------------------------------------------------------------- x

                                   15-CV-0096 (NG)(PK)

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR ATTORNEY'S FEES AND COSTS**

    **I.**      **Factual Background**

      What follows is a brief summation of relevant facts, compiled from the docket, Robert

Marinelli's and Afsaan Saleem's affidavits and time sheets.[1]  Plaintiff refers the Court to its opening

brief and supporting documents for more detail.

      On June 19, 2014, the incident that gave rise to this litigation occurred.  Mr. Cummins

retained Mr. Marinelli shortly thereafter, and Mr. Marinelli began work on this case even while the

prosecution that grew out of the false arrest remained open.  Mr. Marinelli counseled Mr. Cummins

and his criminal defense attorney, and began to seek and interview potential witnesses.

      By January 8, 2015, a state court had dismissed the underlying prosecution, and Mr.

Cummins—through Mr. Marinelli—filed this Section 1983 action false arrest, excessive force,

---

[1] Hereinafter Mr. Marinelli and Mr. Saleem will be collectively referred to as "Counsel."

deprivation of fair trial, and more.  Docket No. 1.  Mr. Cummins also sought his reasonable attorneys' fees pursuant to Section 1988.  Id.

On November 17, 2015, Mr. Saleem made a Notice of Appearance and Counsel thereafter jointly prosecuted Mr. Cummins's civil rights claims.  Docket No. 14.

The Parties heavily litigated discovery in this case due to certain complex issues.  For example, the second of two uses of force involved a unique set of officers who allegedly used a conducted energy device ("CED") upon Mr. Cummins while he was handcuffed.  This claim required Counsel to seek discovery relating to the City's internal rules and protocols regulating when and to what extent law enforcement can deploy a CED weapon.

In the context of the Parties' many discovery disputes, Counsel conferred regularly with Defense Counsel via telephone, email and letter.  In addition, Counsel conferred regularly between themselves as to law, facts and strategy relating to case development.  Finally, Counsel prepared to appear and actually appeared before the Court in connection with pretrial conference and a motion to compel.[2]

Nearer to the end of discovery, Counsel defended Mr. Cummins's deposition and took one Defendant's deposition.  Counsel naturally spent many hours preparing for these depositions, even before the many hours physically spent at the actual proceedings.

On June 17, 2016, roughly eighteen months after the litigation had been filed, Defendants served, and Mr. Cummins accepted, a FRCP Offer of Judgment.  Docket No. 20.  The Parties now dispute what constitutes "reasonable attorneys' fees and costs" in this case.

**II.      Section 1988 Attorneys' Fees Are Part Of Mr. Cummins's Damages**

---

[2] Counsel previously misstated that there were three such motions.  Their timesheets properly reflect that there was only one.

Under Section 1988, "when a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority," and may obtain reasonable attorneys' fees as the prevailing party.  Fox v. Vice, 563 U.S. 826 (2011) (citations & quotations omitted).  It is the civil rights plaintiff, and not the plaintiff's attorney, who seeks attorneys' fees under that law. See Gordon v. City of N.Y., No. 09 Civ. 4577 (ERK), 2015 WL 1514359, at *5 (EDNY Apr. 3, 2015) (citing Venegas v. Mitchell, 495 U.S. 82, 87 (1990)).

### III.    Arbor Hill Factors Support Plaintiffs' Requested Rates

Determination of a reasonable hourly rate by which a petitioning plaintiff may compensate his or her attorney "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel, an inquiry that may include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district."  K.L. v. Warwick Valley Cent. Sch. Dist., 584 F. App'x 17, 18 (2d Cir. 2014) (citations & quotations omitted) (applying the Arbor Hill analysis in the IDEA context).

Defendants deviate from the Arbor Hill test, arguing that Counsel's rates are too high (1) because Counsel do not have the same number of years' experience as certain attorneys when that is not what is most relevant to who is an attorney comparator; (2) because of the "relative simplicity of this case," when that is not true; (3) because Mr. Cummins's document production was small, which is irrelevant; and (4) because Mr. Saleem's requested rate would represent a 7%-per-year raise from the case-specific rate he was awarded in a different case, which is a novel and **supported** approach to the question.  Docket No. 28 (citing Fryar v. City of N.Y., No. 10 Civ. 5879 (EDNY) (TLM)

(MG), <u>Docket No. 55</u>).  Mr. Cummins disagrees with each of Defendants' arguments that he should

seek to compensate his Counsel differently than he has requested.[3]

### a.  Counsel's Requested Rates Are Consistent With Prevailing Market Rates

In <u>Finch v. New York State Office of Children and Family Services</u>, 861 F. Supp.2d 145,

153-54 (S.D.N.Y. 2012), the Southern District of New York denied an attorney with forty-two years

of experience a requested rate of $550 per hour because, among other thing, this was a rate reserved

for unusually complex cases and for attorneys with "uniquely strong trial skills."  In granting that

attorney $450 per hour instead, the <u>Finch</u> Court held that it considered the fact that the attorney

operated more as a solo practitioner than like the member of a large New York law firm.  <u>Id.</u>  This

approach, <u>Finch</u> held, reflected the fact that it would be inappropriate for a solo practitioner to

receive the $600 per hour rates that large law-firm partners received in that era due, in part, to solo

practitioners' relatively lower overhead, and the solo practitioners' need to handle less demanding

tasks that a large law-firm partner might otherwise give to a junior associate.  <u>Id.</u> at 153-54.  At the

same time, the court held, there was "something to be said for solo practioners and very small firms

that avoid the often duplicative billing that is found when junior and senior attorneys work

together."  <u>Id.</u> at 154.

Here, Counsel, like the attorney in <u>Finch</u>, operate small law offices with all that that entails,

<u>i.e.</u>, the existence of certain efficiencies of scale and the absence of others.  In recognition of that

fact, Mr. Cummins has already discounted Counsel's rates significantly from the rates of large law

firm partners.

---

[3] Mr. Cummins will not address with any detail, unless the Court would like, Defendants' suggestion that Counsel's legal prowess should be heavily discounted by the Court because they failed to appear for a February 11, 2016, conference, requiring that it be rescheduled.  <u>Docket No. 28</u>.  Counsel apologize again—to the Court and Defendants alike—for that unintentional error.

Defendants then invoke Finch to mean something more, which is that because the attorney in that case had forty-two years of experience, while Counsel log fewer, the Court should apply Finch to preclude Counsel from receiving a rate near to $450 per hour. This is a faulty premise. The Second Circuit plainly requires a fee applicant's comparator to be someone with similar experience, not merely someone clocking the same number of years. See K.L., 584 F. App'x at 18.[4]

On the subject of Counsel's experience, Defendants refuse to acknowledge that it is objectively substantial. As for Mr. Saleem, it is hard to imagine any reasonable client not assigning great value to the unique professional experiences and skills he describes in his affidavit. Any rational actor would likely choose him over a competing attorney charging the same hourly rate but with a slighter profile. Mr. Saleem's affidavit speaks to his talents in more detail, but it bears noting that when he worked in civil rights defense for many years, City Law Department supervisors themselves chose him over other people for promotions and appointment to high-profile teams and cases. Now, in the context of this motion, Defendants wish to reverse their opinion of Mr. Saleem for the simple fact that he is litigating on the other side of the "v."

Defendants also refuse to acknowledge that Mr. Marinelli's experience is substantial and of significant value in the marketplace. Defendants seek to minimize Mr. Marinelli's expansive trial experience—which any reasonable client seeking a civil rights attorney would be overjoyed to have in a lawyer, sniffing that it should not count for much because it was gained in the context of criminal defense work. Docket No. 28. Defendants' intended point is as shortsighted as it is disrespectfully phrased. Setting aside whether, generally speaking, trial skills translate easily from the criminal to civil contexts, Mr. Marinelli has in fact tried four Section 1983 cases. It is true that Mr.

---

[4] Indeed, Defendants concede this point in the context of one of their jabs at Counsel, stating that the year of someone's bar admission is "not indicative of [their] level of experience." Docket No. 28. On similar logic, Defendants are incorrect to suggest that Mr. Saleem's rate should be set by reference to someone with whom he once shared office space.

Marinelli's criminal trial experience is particularly voluminous, but that is, objectively speaking, a tremendous strength for a civil rights lawyer.  It is axiomatic that New York Penal Law and New York Procedure Law figure greatly in any civil rights case, and Mr. Marinelli has a substantial command of both.  See, e.g., Andrews v. City of New York, No. 14-CV-4845, 2015 WL 2237060 (E.D.N.Y, May 12, 2015) (awarding a fee of $425 to a solo practitioner in Brooklyn with experience in approximately 650 Section 1983 cases); Blount v. City of New York, 11-CV-0124 (BMC), 2011 WL8174137  (E.D.N.Y.  Aug. 11, 2011) (awarding a $425 hourly rate to an attorney with an office in Brooklyn with over fifteen years of experience who has appeared in over 150 federal lawsuits); Thorsen v. County of Nassau, No. 03 Civ. 1022, 2011 WL 1004862, at *5 (E.D.N.Y. Mar. 17, 2011) (finding $450 to be a reasonable rate for a partner with an office in Nassau County) (collecting cases); Artemide Inc. v. Spero Elec. Corp., 2010 U.S. Dist. LEXIS 136870, 2010 WL 5452075 (EDNY. Nov. 23, 2010) ("Current prevailing rates for partners in the Eastern District range form $350.00 to $450.00.").

### b. The Parties Litigated Complex Discovery Disputes In This Case, And The Amount Of Records That Mr. Cummins Produced Is Irrelevant To The Question Of Counsel's Rates

Defendants repeatedly argue that Mr. Cummins's claims were garden variety and not complex. Docket No. 28 at 7, 9.  Mr. Cummins disagrees.

Taking Mr. Cummins's excessive force claim, it required that he prove that Defendants' force was excessive or objectively unreasonable under the circumstances. See Graham v. City of N.Y., 928 F. Supp.2d 610, 624 (E.D.N.Y. 2013).  On this record, Mr. Cummins confronted numerous complex factual issues which Defendants refuse to recognize now, but which they would have surely exploited at trial.   As just one example, because there were two uses of force against plaintiff by two distinct sets of police officers, Counsel had to consider how and to what extent the first set of officers' knowledge of Mr. Cummins's alleged "threat to the safety of the officers or

6

others" was communicated to the second set of officers, who also claimed to have used justifiable force.  See Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010).  As another example, Counsel had to consider the need to educate a jury about CEDs rather than rest on the public's assumptions about these weapons from popular culture.  There is a difference, for example, between Taser projectiles and "Drive Stun" mode, and the related facts are extremely relevant to an excessive-force analysis.  See, e.g., Crowell v. Kirkpatrick, 400 F. App'x 592, 595 (2d Cir. 2010) (finding that defendants' use of a particular taser mode against plaintiffs was excessive in light of the circumstances); Brooks v. City of Seattle, 599 F.3d 1018, 1027 (9th Cir. 2010) (discussing drive-stun mode); see also Peter Sergo, What Do Tasers Do To The Body?, at scienceline.org/2007/08/ask-sergo-tasers/ (last accessed Sept. 26, 2016).

Here, Counsel does not more exhaustively catalog the various complex issues in this case (although Counsel is happy to provide that on request), but suffice it to say that Defendants' argument fails to acknowledge that Counsel's discovery requests, review of document productions, and deposition questions, among other things, all require critical thinking skills.  Indeed, if Counsel were as inept as Defendants suggest, and this case as simple, it is doubtful that the Parties would be disputing fees as a consequence of Defendants voluntarily offering to enter judgment for Mr. Cummins in this case after eighteen months of litigation.

On the same subject of complexity, Defendants argue that the Court should not view this case as complex because Mr. Cummins did not bear a great burden of production in this matter. Docket No. 28.  In light of the fact that Section 1983 is meant to hold to account a "violator of federal law," whether or not the violator's victim has many documents to produce is in irrelevant to the complexity question.  Vice, 563 U.S. at 833.

   c. **Defendants' Proposal That The Court Interpret Mr. Saleem's Requested Rate As A "Raise" Is Without Legal Support**

Defendants argue that Mr. Saleem's requested rate is inappropriate because it would require the Court to give him a 7%-per-year raise from the $350 per hour that the Honorable Marilyn D. Go held he was entitled to for work he completed in 2011.  Docket No. 28 (citing Fryar v. City of N.Y., No. 10 Civ. 5879 (EDNY) (TLM) (MG), Docket No. 55).  Defendants' argument is irrelevant and ignores relevant law.

In Mariani v. City of New York, No. 12 Civ. 388 (NG) (JMA), 2013 WL 11312399 at *1 (E.D.N.Y. July 1, 2013), this Court rejected a plaintiff's attorney's suggestion that the Court was collaterally estopped from deviating from the $425-per-hour that a previous judge granted him.  As the Court noted, "numerous individual factors may affect the appropriate hourly rate to the same lawyer in different cases."  Id.

Yet Defendants effectively contend that Fryar set $350 per hour as Mr. Saleem's wage going forward.  Docket No. 28 at 7-8.  Defendants then undertake a unique mathematical analysis to argue that Mr. Saleem's requested rate here should be denied because it would be tantamount to a large "raise."  It is simply incorrect to characterize the requested rate in this case as a raise if in subsequent cases the rate would not control, as Mariani and related case law make clear.[5]

## IV.    Counsels' Compensation For Work On This Motion

Plaintiff's counsel should be compensated for writing this motion. In good faith, plaintiff attempted to settle fees without Court intervention. Defendants' failure to engage in negotiations caused plaintiff to request two extensions.  See Saleem Supp. Decl, ¶¶ 5-7. Not until six

---

[5] Furthermore, even if we were to discuss it as a raise, it should be noted that the author of Defendants' brief received a reported 12.7% increase in his annual salary from 2015 to 2016.  See www.seethroughny.net (last accessed Sept. 26, 2016). Defendants would argue that this is not an apt comparison because Mr. Saleem works in the private sector.  Mr. Cummins argues that it is an apt comparison insofar as Section 1988 serves to encourage lawyers to work in furtherance of the public good from the private sector.  See Fox, 563 U.S. at 833 (stating that when a plaintiff succeeds in remedying a civil rights violation, he served "as a private attorney general," vindicating a policy that Congress considered of the highest priority").

weeks after providing plaintiff's bill, and three days before this motion was due, did defendants make their first offer of settlement. When it became clear that settlement was unlikely, plaintiff filed the instant motion.

## IV.     Conclusion

In light of the foregoing, Mr. Cummins respectfully requests that the Court grant his motion for reasonable attorneys' fees.

Dated:          September 26, 2016
                New York, New York


                                        /s
                                ROBERT MARINELLI, ESQ.
                                305 Broadway, Suite 1001
                                New York, New York 10007
                                (212) 822-1427

9